```
           IN THE UNITED STATES DISTRICT COURT
          FOR THE WESTERN DISTRICT OF TENNESSEE
                     WESTERN DIVISION
```
_____

TREY ALAN MAJORS,

      Plaintiff,

vs.                                No. 04-2711-Ml/V

KENNETH BOYD and JAMES CLARK,

      Defendants.

_____

    ORDER DENYING MOTION TO DISMISS FILED BY JAMES CLARK
                             AND
   ORDER GRANTING MOTION TO DISMISS FILED BY KENNETH BOYD
_____

      Plaintiff, Trey Alan Majors, Tennessee Department of Corrections (TDOC) inmate number 247162, an inmate at the Southeastern Tennessee State Regional Correction Facility in Pikeville, Tennessee, who was formerly incarcerated at the West Tennessee State Prison (WTSP) in Henning, Tennessee, filed this <u>pro se</u> complaint under 42 U.S.C. § 1983 against WTSP Officers Sergeant Kenneth Boyd and Lieutenant James Clark.

      Majors alleged that on February 28, 2004, at approximately 2:30 p.m., he was placed in leg irons according to Tennessee Department of Correction (TDOC) policy to work outside his cell. He alleges that at the completion of his shift, at approximately 7:30 p.m., the left shackle malfunctioned and several officers were unable to remove it from his leg. Plaintiff alleges that the shift supervisor was notified of the predicament. When the officers from

that second shift left for the day, Majors alleges that he was told that third shift officers would handle the problem.

Plaintiff alleges that officers on the next shift, including defendant Lieutenant James Clark, were also unsuccessful in their attempts to remove the shackle. Plaintiff alleges that the attempts caused him much discomfort and swelling. He was forced to sleep in the shackle and was told it would be removed the next day. Majors alleges that sleeping in the restraint was difficult.

Plaintiff alleges that first shift the next day made one attempt to remove the shackle. He alleges that because he was scheduled to work second shift, another shackle was placed on top of the malfunctioning shackle and no attempts were made by second shift officers to remove the shackle that was stuck. Plaintiff alleges that his leg was sore and swollen. He alleges that he had to shower while in the shackle and was placed back in his cell with no further attempts to remove the restraint.

Plaintiff alleges that by third shift, his leg, with the metal cutting into his skin from the swelling, was so sore that he could not even lay down. Plaintiff alleges that a third shift officer advised him that no one had reported that plaintiff remained in the shackle. Another officer and the nurse were summoned. Plaintiff alleges that the nurse directed that the shackle must be removed immediately. He alleges that after an hour and a half of twisting, cutting, pulling, and bending, the shackle was removed. Majors alleges that he had been in the shackle for thirty-four hours and over the course of five shift changes. Plaintiff alleges that the

nurse gave him pain medication and a topical creme.  He alleges that his leg sustained abrasions and remained sore for two or three days.

He alleges that after he filed a grievance, defendant Boyd came to his cell requesting that the grievance be dropped because the officers had been "chewed out."  Plaintiff alleges that Clark was the shift supervisor on the first day and Boyd was the supervisor the second day.  He alleges that Boyd informed him that he was notified that an inmate had a shackle that could not be removed; however, he "thought they said it was the trayroom man instead of Trey Majors."

On September 6, 2005, defendants Boyd and Clark filed a motion to dismiss, accompanied by a memorandum in support, contending that plaintiff has failed to state a claim for use of excessive force; has failed to allege that either defendant "touched him at any time or had any direct involvement with the infliction of his alleged injuries;" has mistakenly relied on the theory of respondeat superior; and has failed to exhaust his administrative remedies.

When considering a motion to dismiss, the Court must "treat all of the well-pleaded allegations of the complaint as true." Miree v. DeKalb County, 433 U.S. 25, 27 n.1 (1977).  See also Saylor v. Parker Seal Co., 975 F.2d 252, 254 (6th Cir. 1992).  The Court must construe all the allegations in the light most favorable to the plaintiff.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved

3

consistent with the allegations." Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984). It must appear beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

The Court first addresses defendants' theory that plaintiff fails to state a claim of use of excessive force by the defendants. Defendants misread plaintiff's complaint. Plaintiff does not put forward a claim of excessive force; however, his complaint does allege a violation of the Eighth Amendment. The Eighth Amendment prohibits the intentional infliction of cruel and unusual punishment on an inmate. Wilson v. Seiter, 501 U.S. 294, 297 (1991). The Eighth Amendment proscription on cruel and unusual punishment encompasses an inmate's right to personal safety. Stewart v. Love, 796 F.2d 43, 44 (6th Cir. 1982).

To state a claim under the Eighth Amendment, the inmate must allege a serious threat to his personal safety. Knight v. Gill, 999 F.2d 1020, 1022 (6th Cir. 1993); Nelson v. Overberg, 999 F.2d 162, 165 (6th Cir. 1993); Marsh v. Arn, 937 F.2d 1056, 1060 (6th Cir. 1991). In explaining this requirement of a serious threat, the Supreme Court has held that an Eighth Amendment claim requires a showing that an inmate "is incarcerated under conditions posing a substantial risk of serious harm." Farmer, 511 U.S. at 834. In evaluating the types of conditions that constitute a substantial risk of serious harm, the Court considers not only the seriousness of the potential harm and the likelihood that the harm will

4

actually occur, but evidence that unwilling exposure to that risk violates contemporary standards of decency, such that society does not choose to tolerate this risk in its prisons.  Helling v. McKinney, 509 U.S. 25, 36 (1993).

In addition, there is a subjective component to an Eighth Amendment violation.  See, e.g., Farmer, 511 U.S. at 834; cf. Wilson, 501 U.S. at 299-300; Caldwell v. Moore, 968 F.2d 595, 602 (6th Cir. 1992).  Under Farmer, in order to prove that a prison official was deliberately indifferent, the inmate must prove that an officer "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer, 511 U.S. at 837; cf. Walker, 917 F.2d at 1454 (prison official displays deliberate indifference when "he causes unnecessary and wanton infliction of pain on the [inmate] by deliberately disregarding a serious threat to the [inmate]'s safety after actually becoming aware of that threat").  The Court further stated that "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Farmer, 511 U.S. at 837.

In Brown v. Bargery, 207 F.3d 863, 867 (6th Cir. 2000), the plaintiff alleged that his Eighth Amendment rights were violated by the improper installation of sleeping bunks with protruding anchor bolts which could potentially cause injury.  Id. at 865.  The Sixth Circuit found Brown's allegations of an unsafe sleeping environment

5

similar to those in Helling v. McKinney, 509 U.S. 25, 28 (1993), and concluded that the plaintiff stated a cause of action under the Eighth Amendment by alleging facts conceivably showing that the defendants acted with deliberate indifference towards future health problems that may develop as a result of unsafe sleeping conditions. Brown, 207 F.3d at 867-68. Furthermore, the Sixth Circuit concluded that based upon Brown's allegations concerning his repeated attempts to notify prison officials about the cell conditions, the defendant knew about and deliberately disregarded the risk to Brown's health and safety. Id.

Plaintiff's grievance and complaint contain facts from which a factfinder could conclude that the shackle stuck to plaintiff's leg was obvious, as was the risk of serious injury from the swelling which resulted from the multiple attempts to remove the shackle. Furthermore, contrary to defendant Clark's theory that plaintiff failed to attribute the resulting injury to any defendant or to allege that either defendant touched him, plaintiff has alleged defendant Clark, not only arrived on the third shift the first night his shackle was stuck, but also made multiple unsuccessful attempts to remove the shackle, increased plaintiff's discomfort, and then left the problem to be resolved by the next shift. Thus, plaintiff has produced evidence which may demonstrate that defendants not only acted with deliberate indifference towards plaintiff's condition, but in fact created the very risk of injury to plaintiff by their own inept attempts to remove the shackle and that the defendants were then indifferent to that risk of injury.

6

The Court has again reviewed plaintiff's administrative grievance and determined that contrary to the allegations in defendants' motion, plaintiff named defendant Clark in the grievance which was attached to his complaint. Although defendant Clark may be able to demonstrate on summary judgment or at trial that he did not act with deliberate indifference, genuine issues of material fact remain at this stage of the proceedings. Accordingly, the motion to dismiss is DENIED as to defendant Clark.

With regard to the motion to dismiss filed by defendant Kenneth Boyd, the Court's review of the complaint and grievance demonstrates that the allegations against Boyd stem from the fact that Boyd was a shift supervisor on the second day and from Boyd's actions and statements after plaintiff's grievance was filed.

Prison officials are not liable under the Eighth Amendment for an injury to an inmate merely because they were on duty at the time of the injury. See Gibson v. Foltz, 963 F.2d 851, 853-54 (6th Cir. 1992); Marsh v. Arn, 937 F.2d 1056, 1067-69 (6th Cir. 1991). Instead,

> [t]here must be a showing that the supervisor encouraged the specific instance of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates.

Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984)(liability under § 1983 in defendant's personal capacity must be predicated upon some showing of direct, active participation in alleged misconduct)(citation omitted). A supervisory official who is aware

of the unconstitutional conduct of his subordinates but fails to act generally cannot be held liable in his individual capacity. Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999); Lillard v. Shelby County Bd. of Educ., 76 F.3d 716, 727-28 (6th Cir. 1996). In this case, the complaint is devoid of allegations that defendants Boyd "at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates." Bellamy, 729 F.2d at 421.

Plaintiff's allegation that Boyd stated that he was notified that an inmate had a shackle that could not be removed would be sufficient to create a genuine issue of fact as to Boyd's knowing acquiescence in allowing Majors to remain in the shackle. However, despite plaintiff's inclusion of the allegations pertaining to Boyd in the complaint, he did not name Boyd in the administrative grievance. Although plaintiff has utilized the grievance procedure, he has not demonstrated that he filed a grievance naming defendant Boyd, as required by Moorer v. Price, 83 Fed. Appx. 770, 772 (6th Cir. Dec. 9, 2003)(plaintiff did not exhaust claim against warden because his grievance did not identify warden or articulate any claim against her); Thomas v. Woolum, 337 F.3d 720, 733-34 (6th Cir. 2003); and Curry, 249 F.3d at 504. Accordingly, plaintiff has not satisfied his burden of demonstrating that he exhausted his administrative remedies against Boyd and the motion to dismiss is GRANTED as to defendant Boyd.

This is not a final order, and the Court therefore certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order is not taken in good faith.

IT IS SO ORDERED this 30th day of March, 2006.

/s/ Jon P. McCalla
JON PHIPPS MCCALLA
UNITED STATES DISTRICT JUDGE
