IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

TREY ALAN MAJORS,

  Plaintiff,

v.              No. 04-2711-Ml/V

JAMES CLARK,

  Defendant.

_____

ORDER DENYING MOTION FOR APPOINTMENT OF COUNSEL
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND
ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
_____

  Plaintiff, Trey Alan Majors, Tennessee Department of Corrections (TDOC) inmate number 247162, an inmate at the Hardeman County Correctional Facility in Whiteville, Tennessee, who was formerly incarcerated at the West Tennessee State Prison (WTSP), in Henning, Tennessee, filed this pro se complaint under 42 U.S.C. § 1983 against WTSP Lieutenant James Clark.

  On February 28, 2004, at approximately 2:30 p.m., Plaintiff Majors was placed in leg irons in order to work outside his cell as a janitor. It is undisputed that at that time, plaintiff was a maximum security inmate, a classification which required that he be shackled with leg irons for the duration of his workshift under Tennessee Department of Correction (TDOC) policy. At the completion of Majors' shift, at approximately 7:30 p.m., the left

shackle malfunctioned and several officers were unable to remove it from his leg.

Defendant Clark arrived at WTSP for work on February 28, 2004, at approximately 8:00 p.m. Because there was no captain on duty that evening, Defendant Clark assumed the position of Shift Commander. Later that evening, Defendant Clark was informed that Plaintiff had a shackle on one of his ankles which could not be removed due to an equipment malfunction.

Defendant Clark and several other officers went to Plaintiff's cell to attempt to remove the shackle but were unsuccessful. Defendant Clark used all the tools available to him during his attempts to remove the shackle, although he chose not to use a saw or power tool in order to avoid injury to Majors. Because February 28, 2004 was a Saturday, no maintenance workers were present at WTSP, nor would they be the following day, a Sunday. Maintenance workers had access to additional tools. Clark placed a piece of material between Plaintiff's leg and the shackle to avoid injury, even though he had never seen an injury result from a stuck shackle.

Plaintiff Majors alleges that the attempts to remove the shackle caused him much discomfort and swelling. He was forced to sleep in the shackle and was told it would be removed the next day. Majors alleges that sleeping in the restraint was difficult. Plaintiff alleges that on February 29, 2004, the first shift made one attempt to remove the shackle. He alleges that because he was scheduled to work the second shift, another shackle was placed on

2

top of the malfunctioning shackle and no attempts were made by second shift officers to remove the stuck shackle. Plaintiff alleges that his leg was sore and swollen. He alleges that he had to shower while in the shackle and was placed back in his cell with no further attempts to remove the restraint.

Plaintiff alleges that by the third shift, with the metal cutting into his skin from the swelling, his leg was so sore that he could not even lay down. Plaintiff alleges that a third shift officer advised him that no one had reported that plaintiff remained in the shackle. Another officer and the nurse were summoned. Plaintiff alleges that the nurse directed that the shackle must be removed immediately. He alleges that after an hour and a half of twisting, cutting, pulling, and bending, the shackle was removed. Majors alleges that he had been in the shackle for thirty-four hours and over the course of five shift changes. Plaintiff alleges that the nurse gave him pain medication and a topical creme. He alleges that his leg sustained abrasions and remained sore for two or three days.

Plaintiff filed a grievance and exhausted his administrative remedies against defendant Clark. The Sixth Circuit has held that district courts are required to dismiss a complaint in its entirety pursuant to 42 U.S.C. § 1997e(a) if the complaint contains any unexhausted claims. Jones Bey v. Johnson, 407 F.3d 801, 805-09 (6th Cir. 2005). Under Jones Bey, a district court must dismiss the entire complaint, rather than attempt to sever the exhausted claims. Defendant's previous motion to dismiss contained a general

contention that plaintiff had not exhausted his administrative remedies or attached documents demonstrating exhaustion. The motion did not clearly enunciate a <u>Jones Bey</u> issue. At present, the issue before the Court is completely exhausted. The Court will not further address any argument that plaintiff has failed to exhaust his administrative remedies against defendant Clark.

On May 26, 2006, Defendant Clark filed a motion for summary judgment, accompanied by a memorandum and two affidavits in support, contending that his actions did not constitute cruel and unusual punishment or an Eighth Amendment violation and that even if his actions did rise to the level of an Eighth Amendment violation, he is entitled to qualified immunity.

On June 16, 2006, Majors responded to the motion for summary judgment by filing a third motion for appointment of counsel and his own motion for summary judgment with an attached supporting affidavit and exhibits.

Although a district court is vested with broad discretion in determining whether to appoint counsel for an indigent civil litigant, appointment of counsel is not a constitutional right, and courts generally do not appoint counsel in a civil case absent a showing of "exceptional circumstances." <u>See</u> <u>Lavado v. Keohane</u>, 992 F.2d 601, 604-06 (6th Cir. 1993). In determining whether an appointment is warranted, courts evaluate the type of case, the complexity of the factual and legal issues involved, and the ability of the litigant to represent himself. <u>See</u> <u>id.</u> at 606; <u>Kilgo v. Ricks</u>, 983 F.2d 189, 193 (11th Cir. 1993)("The key [for

4

determining whether exceptional circumstances exist] is whether the <u>pro se</u> litigant needs help in presenting the essential merits of his or her position to the court. Where the facts and issues are simple, he or she usually will not need such help.")

Majors' claim presents a straightforward issue and he has filed motions and responses which demonstrate that he is capable of presenting his position to the court. The third motion to appoint counsel is DENIED.

As discussed below, genuine issues of fact remain and Majors' motion for summary judgment is DENIED. The Court will, however, consider Majors' "motion" as his response to the motion for summary judgment.

> Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." "So long as the movant has met its initial burden of "demonstrat[ing] the absence of a genuine issue of material fact," the nonmoving party then "must set forth specific facts showing that there is a genuine issue for trial." If the nonmoving party is unable to make such a showing, summary judgment is appropriate.

<u>Emmons v. McLaughlin</u>, 874 F.2d 351, 353 (6th Cir. 1989)(citing Fed. R. Civ. P. 56 and <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986)). In considering a motion for summary judgment, "the evidence as well as the inferences drawn therefrom must be read in the light most favorable to the party opposing the motion." <u>Kochins v. Linden-Alimak, Inc.</u>, 799 F.2d 1128, 1133 (6th Cir. 1986).

Pursuant to Rule 56(e), a "party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(citations omitted). A genuine issue of material fact exists "if the evidence [presented by the non-moving party] is such that a reasonable jury could return a verdict for the non-moving party." Id. at 248. In essence, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

The Court again addresses defendant's theory that plaintiff fails to state a claim which rises to the level of an Eighth Amendment violation. The Eighth Amendment prohibits the intentional infliction of cruel and unusual punishment on an inmate. Wilson v. Seiter, 501 U.S. 294, 297 (1991). The Eighth Amendment proscription on cruel and unusual punishment encompasses an inmate's right to personal safety. Stewart v. Love, 796 F.2d 43, 44 (6th Cir. 1982).

To bring a claim under the Eighth Amendment, an inmate must demonstrate a serious threat to his personal safety. Knight v. Gill, 999 F.2d 1020, 1022 (6th Cir. 1993); Nelson v. Overberg, 999 F.2d 162, 165 (6th Cir. 1993); Marsh v. Arn, 937 F.2d 1056, 1060 (6th Cir. 1991). In explaining this requirement of a serious threat, the Supreme Court has held that an Eighth Amendment claim

6

requires a showing that an inmate "is incarcerated under conditions posing a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 834 (1994). In evaluating the types of conditions that constitute a substantial risk of serious harm, the Court considers not only the seriousness of the potential harm and the likelihood that the harm will actually occur, but evidence that unwilling exposure to that risk violates contemporary standards of decency, i.e., that society does not choose to tolerate this risk in its prisons. Helling v. McKinney, 509 U.S. 25, 36 (1993).

In addition, there is a subjective component to an Eighth Amendment violation--the intent of the prison official. See, e.g., Farmer, 511 U.S. at 834; cf. Wilson, 501 U.S. at 299-300; Caldwell v. Moore, 968 F.2d 595, 602 (6th Cir. 1992). Under Farmer, in order to prove that a prison official was deliberately indifferent, the inmate must prove that the officer "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837; cf. Walker, 917 F.2d at 1454 (prison official displays deliberate indifference when "he causes unnecessary and wanton infliction of pain on the [inmate] by deliberately disregarding a serious threat to the [inmate]'s safety after actually becoming aware of that threat"). The Court further stated that "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Farmer, 511 U.S. at 837.

In Brown v. Bargery, 207 F.3d 863, 867 (6th Cir. 2000), the plaintiff alleged that his Eighth Amendment rights were violated by the improper installation of sleeping bunks with protruding anchor bolts which could potentially cause injury. Id. at 865. The Sixth Circuit found Brown's allegations of an unsafe sleeping environment similar to those in Helling v. McKinney, 509 U.S. 25, 28 (1993), and concluded that the plaintiff stated a cause of action under the Eighth Amendment by alleging facts conceivably showing that the defendants acted with deliberate indifference towards future health problems that might develop as a result of unsafe sleeping conditions. Brown, 207 F.3d at 867-68. Furthermore, the Sixth Circuit concluded that based upon Brown's allegations concerning his repeated attempts to notify prison officials about the cell conditions, the defendant knew about and deliberately disregarded the risk to Brown's health and safety. Id.

It is undisputed that Defendant Clark did not place Plaintiff in the shackles or cause the shackle to malfunction. Plaintiff admits that he was required to wear shackles when performing his job. However, Plaintiff's malfunctioning shackle was an obvious condition. The very actions of Defendant Clark and the other unnamed officers created and/or increased the risk of serious injury when their multiple unsuccessful attempts to remove the shackle caused plaintiff's ankle to chafe and swell. That the plaintiff's risk of injury or injured condition was obvious can be inferred from Defendant Clark's action in placing a cloth between

plaintiff's skin and the shackle, despite Clark's protestation that he had never seen an injury result from a stuck shackle. "Actual knowledge" of a substantial risk does not require that a prison official know with certainty that the prisoner would be harmed. Genuine issues of fact remain as to the condition of plaintiff's ankle after Defendant Clark's attempts to remove the shackle and as to further risk of injury to the ankle by leaving the shackle in place.

Defendant Clark, the Shift Commander, admits that he completed his shift without making further attempts to remove the shackle and that he did not summon maintenance workers who might have had additional tools. Clark did not have Majors examined by medical personnel. Clark left Majors in the shackle with the knowledge that both he and any maintenance workers would not return to work until the following Monday. Plaintiff, however, was required to work the following day, Sunday, with shackles placed on top of the malfunctioning shackle, further increasing his risk of injury. Defendant Clark knew that, as a maximum security inmate, Majors was required to be in working shackles to perform his job. There remains an issue of genuine fact as to whether this conduct constitutes deliberate indifference on the part of Defendant Clark.

Thus, plaintiff has produced evidence which may demonstrate that defendant not only acted with deliberate indifference towards the malfunctioning shackle but created the very risk of injury to plaintiff by his own unsuccessful attempts to remove the shackle and that the defendant was then indifferent to that risk of injury.

According to the Sixth Circuit:

> The doctrine of qualified immunity shields from liability for civil damages those officials whose "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." We evaluate a defendant's claim of qualified immunity by determining whether (1) a constitutional violation occurred, (2) the right violated was clearly established, and (3) "the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights."

<u>Scicluna v. Wells</u>, 186 F.3d 685, 691 (6th Cir. 1999)(citations omitted).  Defendant Clark has failed to carry his burden to demonstrate that plaintiff's right to personal safety was not violated by Clark's own actions.  It follows, <u>a</u> <u>fortiori</u>, that Defendant cannot establish as a matter of law his entitlement to qualified immunity.

As genuine issues of material fact remain in this case, the defendant is not entitled to summary judgment and his motion is DENIED.

This is not a final order, and the Court therefore certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order is not taken in good faith.

IT IS SO ORDERED this 17th day of July, 2006.

/s/ Jon P. McCalla
JON PHIPPS MCCALLA
UNITED STATES DISTRICT JUDGE